**ROYAL DIE CUTTING & HEAT SEALING CORP., Plaintiff,**

v.

**DURO PEN COMPANY, Inc., Defendant.**

United States District Court
S. D. New York.
Sept. 12, 1963.

Charles Sonnenreich, New York City, for plaintiff.

Eckhaus, Eckhaus & Pierce, New York City, Freeman, Kleinberg & Lilling, New York City, of counsel, for defendant.

BONSAL, District Judge.

Plaintiff Royal Die Cutting & Heat Sealing Corporation brought an action against defendant Duro Pen Company, Inc. on August 12, 1963 seeking to declare defendant's Design Patent #195,924 invalid, to permanently enjoin the defendant from threatening plaintiff's customers and others with suits for infringement, and to obtain an accounting and damages. The plaintiff now moves to enjoin the defendant from communicating with and threatening plaintiff's customers with suits for infringement of defendant's patent during the pendency of this action.

The moving papers state that in January 1962 plaintiff and defendant orally agreed that plaintiff was to manufacture plastic jackets for ball point pen cartridges and defendant was to insert the cartridges into the jackets. The finished product was a flat, slim pen suitable for insertion into a wallet or memo pad. Defendant's position is that this finished product is protected by Design Patent #195,924 issued on August 6, 1963 (on an application filed on December 7, 1961) to Robert Perlmutter, an officer of defendant. Plaintiff contends that the aforesaid agreement gave it the exclusive right to sell the finished product and that because defendant, in August 1962, refused to discontinue offering the finished product to plaintiff's competitors at a lower price, plaintiff began "to manufacture and sell its own ball point pens". Plaintiff says that defendant threatened it with a suit if plaintiff continued to sell its own product, and that defendant should now be enjoined from sending warning letters to plaintiff's customers for the purpose of intimidating them into refusing to deal with the plaintiff.

Defendant contends that whatever exclusive rights plaintiff enjoyed under the oral agreement were terminated by July 1962, and that thereafter defendant was within its rights in accepting orders from

plaintiff's competitors. Perlmutter, an officer of defendant, states in his affidavit that shortly after plaintiff started manufacturing the finished item, he told an officer of plaintiff that until the issuance of the then pending patent defendant could do nothing to halt the alleged infringement.

■■ A patentee enjoys the presumption of validity arising from the issuance of a patent and may assert his rights against anyone whom the patentee believes in good faith to be an infringer. Magnetic Engineering & Mfg. Co. v. Dings Mfg. Co., 178 F.2d 866 (2d Cir., 1950). No preliminary injunction can thus be granted against a patentee who in good faith sends notices of the existence of his patent and of his desire to protect the same by suits against infringers. Remington Products Corp. v. American Aerovap, Inc., 97 F.Supp. 644 (S.D. N.Y.) aff'd per curiam, 192 F.2d 872 (2d Cir., 1951). The factual question of good faith is clearly paramount in these cases.

■ A warning or threat is made in bad faith if it seeks to obtain the benefits of successful litigation without submitting the validity of the patent to the scrutiny of adjudication. See Kaplan v. Helenhart Novelty Corp., 182 F.2d 311 (2d Cir., 1950). Therefore a patentee's threats were deemed to be in bad faith when it had conceded earlier that its patents were of little worth and had been obtained only for "political" purposes. Magnetic, supra 178 F.2d at 868. Likewise, a patentee was enjoined when it made "persistent threats" of suit against a competitor over a period of more than eight months without actually bringing suit. Betmar Hats, Inc. v. Young America Hats, Inc., 116 F.2d 956, 957 (2d Cir., 1941). In Betmar, however, the competitor had proof that the product it sold was of its own design, predating that of the patentee. Furthermore, since the Declaratory Judgment Act gives the threatened party the means of having the validity of the patent adjudicated, the mere failure of the patentee to sue promptly has been held insufficient to warrant a preliminary injunction. Kaplan, supra 178 F.2d at 314, distinguishing Betmar, supra.

■ Plaintiff has failed to show that defendant's actions were not taken in good faith to protect its patent. Plaintiff has made no showing that defendant does not now believe that its patent will survive adjudication. Perlmutter filed defendant's patent application in the fall of 1961; shortly thereafter defendant commenced commercial exploitation of the design in conjunction with plaintiff, and subsequently the parties discussed a possible license.

■■ The patent was issued on August 6, 1963, and on August 12 plaintiff instituted this action. This short passage of time alone is no showing of bad faith on the part of defendant. Kaplan, supra. Before August 6 suit was impossible, 3 Walker on Patents § 450 at 1682 (A. W. Deller ed., 1937) and Perlmutter undeniedly told plaintiff's officer Rudensky as much. Plaintiff could not have been coerced or harassed by threats of what it knew to be impossible. After issuance of the patent defendant could not recover for acts occurring before that time. See Zalkind v. Scheimman, 139 F.2d 895, 904–905 (2d Cir., 1943), cert. denied, 322 U.S. 738, 64 S.Ct. 1055, 88 L.Ed. 1572 (1944).

■ Good faith did not require that defendant commence its own suit subsequent to the commencement of this action since this action will eventually adjudicate the question of validity. See, Remington, supra 97 F.Supp. at 648.

Motion for preliminary injunction is denied.

So ordered.