**WALLACE & TIERNAN INC., Plaintiff,**

v.

**GENERAL ELECTRIC COMPANY,**
**Defendant.**

**No. 67 Civ. 4991.**

United States District Court
S. D. New York.

Oct. 7, 1968.

McLean, Morton & Boustead, New York City, for plaintiff, J. Donald Tierney, Cooper, Dunham, Henninger & Clark, New York City, of counsel.

Davis, Hoxie, Faithfull & Hapgood, New York City, for defendant, John Hoxie, James E. Ryder, John E. Nathan, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

Defendant, General Electric Company, holds as assignee a patent, No. 2,888,424, granted in 1959, which is adequately described for present purposes in defendant's Memorandum (p. 2) as being "directed to a curable, cross-linkable composition of (1) *polyethylene* (2) a defined *peroxide* and (3) a specified *filler*. Its claims cover that *three-membered composition*, before and after curing, and the process of curing such a composition." (Defendant's emphasis.) All United States manufacturers of such compositions have taken licenses under the patent. The overwhelming majority of these compositions have been produced with dicumyl peroxide (or "Dicup" as it is said to be "commonly" known) as the curing agent. There is no quarrel between the parties arising directly from that undisputed state of affairs.

However, a controversy—or, more properly for our context, an alleged controversy—has arisen in connection with plaintiff's development (as licensee or owner of certain other patents) of some so-called polyperoxides, a process of curing polyethylene with such polyperoxides, and polyethylene compositions capable of being so cured. Of specific and immediate interest are plaintiff's polyperoxide products which go by the trade names Lupersol 101 and Lupersol 130. According to defendant, the use of either Lupersol as curing agent for a composition otherwise covered by defendant's patent would fall within the claims of the patent. According to plaintiff, the composition produced with Lupersol is outside the patent. Furthermore, plaintiff asserts, if the patent is construed to cover compositions made with Lupersol, it is invalid for unlawfully excessive breadth in its claims. In addition, plaintiff makes a familiar array of attacks upon the validity of defendant's patent—for lack of novelty, obviousness, etc.

Defendant has insisted in dealing with its licensees that use of Lupersol for

the composition in question falls within the patent. Defendant has demanded and collected royalties from its licensees for compositions thus produced.[1] One or two of the licensees have either failed to pay such royalties or expressed disagreement with defendant's position or both. But the licensees—because, plaintiff says, they are "fearful" when they confront defendant's "position of dominance"—have refrained from a direct challenge to defendant, and plaintiff's efforts over the past eight years to induce potential customers to use Lupersol have been unsuccessful. Instead, the licensees have deferred to defendant's view that the use of Lupersol requires their payment of royalties under the '424 patent. And since the cost of royalties renders Lupersol noncompetitive with Dicup, plaintiff is deprived of "the chief or principal market" for its product.

Alleging most or all of the foregoing facts,[2] plaintiff brought this suit for declaratory and injunctive relief based upon its contentions that defendant's patent is, on the theories already mentioned, invalid and not infringed where Lupersol is used. In addition, there is a standard prayer for "other and further relief" plus costs "and a reasonable attorney's fee." The court's jurisdiction is invoked not only under the patent laws but on grounds of diverse citizenship—a point of some interest to be noted again later on.

Defendant has moved to dismiss for want of a justiciable controversy. While its motion papers suggest some actual or incipient differences with plaintiff over matters of fact, defendant's essential view is that on essentially undisputed facts the action does not constitute the kind of "actual controversy" (28 U.S.C. § 2201) over which this court may or should assume jurisdiction. The court finds it unnecessary to resolve definitively the few divergences in the parties' views of (or emphases concerning) the facts. On the broad and undisputed outlines of their business, economic and legal positions, defendant's motion must be denied.

### I.

To summarize it in defendant's words, the thesis of the motion is as follows:

"There are *two* requirements for a 'controversy' in a declaratory action against a patent. *First,* the declaratory plaintiff's conduct, present or intended, must infringe the patent. *Second,* the patent owner must have charged the plaintiff with infringement. \* \* \* The Complaint in this action does not allege anything to support *either* of those two requirements." [3]

Both of these assertedly indispensable propositions are erroneous, or at least excessively broad; neither can serve to bar the adjudication plaintiff seeks.

Defendant's first proposed requirement—that the conduct of the plaintiff seeking the declaration "must infringe the patent"—appears to be overstated in a fairly obvious and perhaps unintended way. It is familiar and appropriate practice for a plaintiff to seek a declaration that he is *not* infringing a patent along with (or even in lieu of) a judgment holding the patent invalid. See, e. g., Ostow & Jacobs, Inc. v. Morgan-Jones, Inc., 180 F.Supp. 38 40 (S.D.N.Y.1959). Plaintiff, therefore, proceeds on a perfectly acceptable course when, far from alleging, it *denies* infringement of defendant's patent by the use of Lupersol. Cf. Japan Gas Lighter

---

1. In an interesting exception, defendant's license agreement with National Distillers provides that royalties need not be paid on the use of Lupersol 130 unless a court should determine that such use is within the patent.

2. The motion now before the court is made upon, and opposed with, affidavits, depositions, and exhibits. In what has preceded this point, and in what follows, some details come from these materials outside the pleadings.

3. Memorandum in Support of Motion, p. 3 (defendant's emphasis; citations omitted).

Ass'n v. Ronson Corp., 257 F.Supp. 219, 239–241 (D.N.J.1966). A victory on this thesis would be no less genuine and proper as an objective than a similar result rejecting a suit by the patentee, without reaching validity, on the ground of *non-infringement*. See, e. g., cases collected by Judge Clark concurring in Cover v. Schwartz, 133 F.2d 541, 551 (2d Cir. 1943).

■ The meaningful and substantial difficulty is presented by defendant's second proposition—that "the patent owner must have charged *the plaintiff* with infringement." (Emphasis added.) Despite the parties' differences in characterizing some of the events, it is not really disputed that defendant has never charged plaintiff with infringement or contributory infringement or inducement of infringement. Furthermore, there is not much force in plaintiff's insistence that defendant's construction of the patent in suit would lead in law to a finding of contributory infringement or unlawful inducement by plaintiff. Defendant not only demonstrates the absence of any such charge in the past; it announces flatly and unequivocally that it will never make such charges *against plaintiff* in the future based upon any actions of the kind plaintiff may foreseeably take with respect to the making, promotion, and purveying of its Lupersol products. Accordingly, if plaintiff's concern arose only from its own prospective liability in a suit against itself by the present defendant, the motion to dismiss would have to be granted. For defendant's repeated and unambiguous disclaimers in support of the motion would surely protect plaintiff in the unlikely event of an attempt to retract them at some future time. See Lukens Steel Co. v. American Locomotive Co., 197 F.2d 939 (2d Cir. 1952); General Electric Co. v. Sciaky Bros., Inc., 187 F.Supp. 667, 672, 674 (E.D.Mich.1960), aff'd, 304 F.2d 724 (6th Cir. 1962); Aralac, Inc. v. Hat Corporation of America, 64 F.Supp. 696, 698 (D.Del. 1946), aff'd, 166 F.2d 286 (3d Cir. 1948). Cf. Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 814–816, 65 S.Ct. 993, 89 L.Ed. 1381 (1945).

The court has not tarried, therefore, over plaintiff's lengthy efforts to make out a case of contributory infringement or inducement of infringement against itself if defendant's patent position is sustained. Instead, the effort has been to focus upon the nature of the actual hurt plaintiff alleges and to appraise whether the declaratory judgment procedure is precluded in a case of this kind because plaintiff itself has not been and will not be accused or sued directly by the defendant patentee.

## II.

Neither the precedents from the patent field nor (more importantly) the principles defining the "controversies" properly cognizable in the federal courts sustain defendant's view that the useful remedy of declaratory relief must always be confined to a plaintiff who has himself been charged or threatened as an infringer. Such charges or threats supply the clearest occasions, to be sure. But, as this case demonstrates, they do not exhaust the situations in which a live, genuine, concrete controversy over patent claims justifies a demand that the patentee defend in court the validity of his patent and his assertions about its scope.

To state them somewhat more particularly, plaintiff's basically uncontroverted contentions are that it has invested substantially in excess of $350,000 to develop Lupersol and uses therefor; that the chief potential use of the product (and perhaps the only one when the complaint was filed) is for the composition defendant claims to have embraced within its patent; that the potential customers for Lupersol, all licensed by defendant, are required by defendant to pay royalties upon quantities of the allegedly patented composition made with Lupersol; that the added cost of the royalties makes Lupersol noncompetitive with Dicup or other peroxides; that Lupersol is a superior curing agent,

but that its superiority is insufficient to overcome that competitive disadvantage;[4] that defendant's licensees are "dominated" by defendant because they would need the patent licenses for broad uses with materials other than Lupersol even if they found it expedient to enter upon substantial production using Lupersol, while defendant has announced that it stands ready to sue or terminate (or both) any licensee who uses Lupersol without paying royalties upon materials produced with this substance; and that, in any event—whether from resultant fear or lack of sufficient economic stake or other reasons—defendant's licensees have not undertaken to litigate the patent issues even though more than one of them have expressed disagreement with defendant's position. Defendant does not claim that its licensees share its views of the patent or that any such amiable explanation accounts for the absence of a suit by any licensee. On the contrary, defendant has taken pains to show through discovery, with some success, that the bringing of the present suit was "suggested" by one of its licensees, which told plaintiff it would use Lupersol in large quantities if that were possible without paying royalties to defendant.

Defendant's awareness of plaintiff's antagonistic views concerning the patent antedates by some time the bringing of this lawsuit. Officials of the parties have met together to present and debate their opposed contentions. At such a meeting defendant's representatives stated to plaintiff's its determination to sue manufacturers using Lupersol for the curing of filled polyethylene compositions. The General Manager of defendant's Chemical Materials Department is reported, without contradiction, to have acknowledged (as his words are paraphrased) "that Lupersol 101 would penetrate the relevant market for chemical curing agents to a very substantial extent—about 20%—if General Electric did not assert that its use in curing filled polyethylene compositions is within the scope of its patent."

In these circumstances, defendant says that plaintiff, because it has not been sued and will not be sued as an infringer, should have its complaint dismissed because it is only "an officious intermeddler." If that characterization may be thought plausible in law, it does not appear to have influenced the responsible business executives who, on both sides, thought the controversy worthy of valuable time in serious confrontations. Their estimate, the court concludes, is at least relevant. And it is, ultimately, not different from the kind of pragmatic judgment by which courts ought to be guided on issues of the kind here presented. See St. Paul Fire and Marine Insurance Co. v. Aetna Casualty and Surety Co., 357 F.2d 315 (10th Cir. 1966); Borchard, Declaratory Judgments 294, 297–298 (2d ed. 1941).

■ There is nothing "hypothetical" or "abstract" or "academic" or "moot" about the dispute plaintiff wants adjudicated. See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). It is "definite and concrete, touching the legal relations of parties having adverse legal interests." It is "real and substantial" and admits "of specific relief through a decree of a conclusive character * * *." Id. at 240–241, 57 S.Ct. at 464.

■ The practical realities—including the injury to plaintiff's business not

4. Defendant has attempted, through deposition testimony and inferences therefrom, to show that Lupersol is too costly to compete with Dicup even if the royalties were eliminated. The record does not sustain this attempt. Moreover, it hardly seems appropriate to adjudicate with finality on such issues (where, inevitably, some room for speculation must remain in the end) before deciding whether declaratory relief may be given. Not only would the burden be disproportionate; its imposition would be dubious at the instance of a defendant which, if it were truly convinced that predicted competition could never occur, could simply withdraw the alleged obstacle by disclaiming any intention ever to charge infringement or claim royalties.

only alleged by it but acknowledged by defendant—are neither obscured nor attenuated by the fact that defendant has not sued or threatened plaintiff and (on defendant's accepted acknowledgments) could not do so. It is by no means unprecedented to allow suit by a plaintiff thus situated. Thus, in Joseph Bancroft & Sons Co. v. Spunize Co. of America, 268 F.2d 522, 523 (2d Cir. 1959), plaintiff's agreement to indemnify a licensee, though plaintiff itself was apparently neither charged nor chargeable as an infringer, was sufficient to make out the "actual controversy" required by the Declaratory Judgment Act. A similar situation is present here; plaintiff has agreed to indemnify its customers against losses on account of patent claims by defendant. While they are distinguishable in noticeable respects, patent precedents other than the *Joseph Bancroft* case add weight to the plaintiff's position. Western Electric Co. v. Hammond, 135 F.2d 283 (1st Cir. 1943); Alfred Hofmann, Inc. v. Knitting Machines Corporation, 123 F.2d 458 (3d Cir. 1941); cf. A. L. Smith Iron Co. v. Dickson, 141 F.2d 3 (2d Cir. 1944).

Still broader principles are pertinent, and supportive for plaintiff. The problem is, of course, part of the general subject of "standing," which, at least in contexts like the present one, merges with the notion of "justiciability." See Wembley, Inc. v. Superba Cravats, Inc., 315 F.2d 87, 90 (2d Cir. 1963); cf. Barrows v. Jackson, 346 U.S. 249, 255, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 150, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). Even in the field of public law, where we are admonished to be specially zealous against impositions upon the federal jurisdiction through lowering of the standards for "cases" or "controversies," Public Service Comm. of Utah v. Wycoff Co., 344 U.S. 237, 243, 73 S.Ct. 236, 97 L.Ed. 291 (1952), there are occasions when good sense and sound principle allow complain-

ants to assert the legal rights of third parties to prevent or redress palpable and substantial injury to themselves. Barrows v. Jackson, supra, 346 U.S. at 255–257, 73 S.Ct. 1031; Pierce v. Society of Sisters, 268 U.S. 510, 535–536, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149 (1917); Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915); cf. Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 422–424, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942). As in cases like the ones just cited, the plaintiff here is unquestionably hurt by the conduct and asserted legal claims of the defendant. Where the immediately produced result of defendant's announced position is (as we are required to accept on the record thus far made) the loss of substantial business by plaintiff, it is "idle to call the injury indirect or remote." Truax v. Raich, supra, 239 U.S. at 39, 36 S.Ct. at 9. It is important, moreover, that whether from fear or insufficient individual interest, the third parties (defendant's licensees who are plaintiff's potential customers) are unwilling or unable to commence proceedings in which the issues could be resolved. Barrows v. Jackson, supra, 346 U.S. at 257, 73 S.Ct. 1031; Joint Anti-Fascist Refugee Committee v. McGrath, supra, 341 U.S. at 154, 71 S.Ct. 624 (Frankfurter, J., concurring). And while some of the notable constitutional cases have undoubtedly subordinated the usual "rule of practice" because the stakes were "fundamental rights" perhaps more urgent than any involved here, Barrows v. Jackson, supra, 346 U.S. at 257, 73 S.Ct. 1031; and see Sedler, Standing to Assert Constitutional Jus Tertii in the Supreme Court, 71 Yale L.J. 599, 615–16, 646 (1962), the same species of consideration, if somewhat diminished, applies to a contest over patent claims in which the public has interests transcending those of the parties. Cf. Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 815–816, 65 S.Ct. 993, 89 L.Ed. 1381 (1945).

The subject is one in which the "generalities have had myriad applications" (Frankfurter, J., concurring in Joint Anti-Fascist Refugee Committee, supra, 341 U.S. at 150, 71 S.Ct. 624) and in which the "expert feel of lawyers" (*ibid.*), however imprecise as a stated standard, must in some degree guide us through the particular facts of particular cases. It follows that a detailed review of cases, about patents or other things, does not yield rich rewards. But a decent respect for able counsel commands mention of Aralac, Inc. v. Hat Corporation of America, 166 F.2d 286 (3d Cir. 1948), if only to observe that it has been studied with care and found insufficient to lead where defendant would have it followed. The plaintiff there, which manufactured and sold casein fiber to hat manufacturers and others, sued for a declaration invalidating a patent which defendant patentee claimed to encompass a process of hatmaking employing such fibers among other things. The facts upon which the Court sustained dismissal for want of an "actual controversy" are distinguishable from the ones here in at least three respects:

(1) Casein fibers "are a standard article of commerce capable of various uses" (166 F.2d at 294–295), so that the interest of plaintiff Aralac was relatively diffuse and attenuated. Lupersol, the present plaintiff's product, was developed chiefly, if not exclusively, for the use plaintiff seeks to defend and vindicate.

(2) Similarly, having developed the product for a peculiarly relevant purpose, plaintiff contends that the use of Lupersol does not and cannot infringe defendant's patent. While it is not absolutely certain, it appears that the plaintiff Aralac, purveying a kind of staple material as neutral in patent terms as the milk from which it was made (166 F.2d at 297), sought only a judgment of invalidity with no suggestion of a unique and individual ground for attacking the scope of the patent in suit.

(3) There was no indication in *Aralac* that the plaintiff had offered or agreed to indemnify its customers against defendant's enforcement of its patent claims. That factor, decisive under the decision of our Circuit in Joseph Bancroft & Sons Co. v. Spunize Co. of America, supra, is present here.[5]

The conclusion that plaintiff shows the requisite legal interest and concrete need to make the case justiciable generates no fear of abuse by potential plaintiffs minded "to take advantage of patentees whose rights * * * may be of minimal significance in the general scheme of things." Wembley, Inc. v. Superba Cravats, Inc., 315 F.2d 87, 90–91 (2d Cir. 1963). It is perhaps permissible, if by no means vital, to notice that the defendant company is not one likely to be selected as the victim of bullying plaintiffs. More centrally significant are the evidences from defendant's own people that the dispute is genuine, of practical concern to practical people on both sides, and not prompted merely by "an academic interest in the law of patents * * *." Dewey & Almy Chemical Co. v. American Anode, 137 F.2d 68, 70 (3d Cir.), cert. denied, 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454 (1943). Whatever "narrow or technical" conceptions (ibid.) might point one way or another, an adjudication upon the merits in this case would seem to accord with the relevant "sense of * * * fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." Public Service Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 243, 73 S.Ct. 236, 97 L.Ed. 291 (1952).

---

5. It is at least of passing interest that the *Aralac* decision was invoked unsuccessfully by the defendant in Joseph Bancroft & Sons Co. v. Spunize Co. of America, 268 F.2d 522 (2d Cir. 1959). See Brief for Defendant-Appellant, No. 25,519, pp. 15–16.

### III.

In opposition to defendant's motion, plaintiff argued extensively that its complaint asserts jurisdiction not only under the patent laws but also on diversity, and that the latter basis is independently sufficient because the complaint sounds in unfair competition as well as patent theory. Defendant, in reply papers, expresses some understandable surprise over this since the complaint, in a single count, sounds very much like the usual one for declaratory relief concerning a patent notwithstanding the reference to diverse citizenship.[6] The resulting discussion is learned, interesting, and, in the view the court has taken, inconclusive for present purposes.

Basically, defendant argues that the complaint fails to state a claim for unfair competition because it does not allege malice or bad faith in defendant's assertion to the trade of patent rights. There is support for this in the books, but there is also learning to indicate that "[a] warning or threat is made in bad faith if it seeks to obtain the benefits of successful litigation without submitting the validity of the patent to the scrutiny of adjudication." Royal Die Cutting & Heat Sealing Corp. v. Duro Pen Company, 223 F.Supp. 384, 386 (S.D.N.Y.1963); see also Kaplan v. Helenhart Novelty Corporation, 182 F.2d 311, 314 (2d Cir. 1950); Celite Corporation v. Dicalite Co., 96 F. 2d 242, 250–251 (9th Cir. 1938); Oil Conservation Engineering Co. v. Brooks E. Co., 52 F.2d 783, 786 (6th Cir. 1931); cf. Rhodes Pharmacal Co. v. Dolcin Corporation, 91 F.Supp. 87, 89 (S.D.N.Y. 1950). Since the learning traces to cases antedating the Declaratory Judgment Act, when problems like the present plaintiff's had to be labeled unfair competition or "trade libel" or some such thing if they were to ground lawsuits at all, it is possible to question whether the whole topic is worth preserving, any more. See Kaplan v. Helenhart Novelty Corporation, supra, 182 F.2d at 314; Royal Die Cutting & Heat Sealing Corp. v. Duro Pen Company, supra, 223 F.Supp. at 386; 34 Mich.L.Rev. 570 (1936). There is also a debatable question, which need not be decided in this case, whether the suggested claim of unfair competition is open only under the diversity jurisdiction or should properly be treated as arising under the patent laws. Compare American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916), with Ostow & Jacobs, Inc. v. Morgan-Jones, Inc., 180 F.Supp. 38, 41–43 (S.D.N.Y.1959).[7] And there is room to be puzzled, finally, over whether the parties have in some measure confused the question as to the substantive adequacy of an alleged "cause of action" with the question of justiciability, Western Electric Co. v. Hammond, supra, 135 F.2d at 286, although some such "confusion" would appear to be inescapable where the latter requirement necessitates a showing of "adverse *legal* interests," Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510 (1941) (emphasis added); and see Joint Anti-Fascist Refugee Committee v. McGrath, supra, 341 U.S. at 141, 71 S.Ct. 624, 95 L.Ed. 817.

Having noted potential opportunities in this case for scholarly adventure, the

---

6. The prayer of the complaint is for "a judgment that defendant's patent is invalid, and is not utilized or infringed by the manufacture, use and sale of curable polyethylene compositions, and curing of such compositions and of such cured compositions, when utilizing one or more of plaintiff's aforesaid polyperoxides; such other and further relief as the Court deems just and proper to be granted plaintiff; and an award of costs of this action and a reasonable attorney's fee.. Plaintiff further demands a permanent injunction against the defendant, enjoining it from continuing the acts complained of."

7. The Third Circuit, in Aralac, Inc. v. Hat Corporation of America, supra, noted that there was no diversity in that case and that no conclusion was being suggested about a possible claim by the plaintiff there for unfair competition. See 166 F.2d at 286, 291, 295–296.

   If the question is one of state law, neither party has worried much about which State's law may be thought to control.

court forgoes them at this stage. It may be that development of the merits will enhance the showing of justiciability even on defendant's theory by demonstrating a pertinent species of "malice" or "bad faith." There are at least indications already that, knowing of the substantial and proximate impact upon plaintiff's business, defendant has succeeded for some eight or nine years in "enforcing" its patent claims while studiously avoiding any court test of their validity.[8]

However this may be, it is enough for the present motion that plaintiff has made the requisite showing of justiciability under the patent laws. Defendant's motion to dismiss is denied on that sufficient ground.

It is so ordered.

8. Recall, for example, the curious agreement with National Distillers (supra, note 1) leaving that licensee free to use Lupersol 130 without royalty subject to a court decision which defendant shows no interest in ever obtaining.