**BLESSINGS CORPORATION (formerly Associated Baby Services, Inc.), Plaintiff,**

v.

**Gustave ALTMAN and Ben Teitzman, Defendants.**

**No. 73 Civ. 2863.**

United States District Court, S. D. New York.

April 9, 1974.

Sandoe, Hopgood & Calimafde, New York City (John M. Calimafde, Robert A. Schroeder, New York City, of counsel), for plaintiff.

Fitzpatrick, Cella, Harper & Scinto, New York City (Lawrence F. Scinto, Gregory J. Battersby, New York City, of counsel), for defendants.

## OPINION

BAUMAN, District Judge.

This is an action brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and 28 U.S.C. § 1338(a), in which plaintiff seeks a determination that defendants' patent is invalid. The defendants have now moved to dismiss, pursuant to Rule 12(b) of the Federal Rules, on two grounds. They contend first, that the instant action is not founded upon an "actual controversy" between the parties within the meaning of the Declaratory Judgment Act and second, that the court lacks subject matter jurisdiction since the amount in controversy is less than ten thousand dollars. The first of these contentions raises an interesting, if familiar, question of patent law; the second, which is utterly frivolous, does not.

On October 24, 1967, an agreement was made between Blessings, Inc., a wholly owned subsidiary of Blessings Corporation,[1] the plaintiff, and Messrs. Gustave Altman and Ben Teitzman, the defendants. Altman and Teitzman are the joint owners of United States Patent No. 3,266,841, an invention felicitously entitled "Protective Cover Having Means for Releasably Securing It to a Surface" and more intelligibly described

---

1. Blessings Corporation was known at the time as Associated Baby Services, Inc.

as a headrest cover of the sort commonly found protecting seats on airplanes, trains, etc. The agreement granted Blessings an exclusive license for the use of the patent in exchange for the payment of certain royalties.

Disagreements subsequently arose between the parties, apparently over the royalties due the defendants. Two arbitration proceedings were thereupon commenced by the defendants in 1972. In the first, the arbitrator, Frank H. Loomis, determined that the defendants were entitled to none of the royalties they sought and entered an award to this effect on July 10, 1972. The second was commenced in November, 1972 between defendants and another subsidiary of Blessings Corporation. There the arbitrator, Francis C. Hand, found the plaintiff liable to the defendants for royalties accruing between April 1, 1971 and August 24, 1972, the date on which plaintiff had terminated the license agreement. In his award, dated April 27, 1973, the arbitrator also directed that an accounting for past royalties take place within sixty days of his decision.

On June 21, 1973 Blessings instituted an action in the Supreme Court, New York County (Index No. 11314/73) to confirm the Loomis award, and on June 26, 1973 defendants commenced a similar action in the same court (Index No. 11492/73) for confirmation of the Hand award. The Loomis award was confirmed by Justice Helman on July 20, 1973. Blessings, however, removed the action seeking confirmation of the Hand award to this court (73 Civ. 2926) and on August 1, 1973 I granted Altman and Teitzman's motion to remand to the state court. Upon remand, Justice

Quinn entered an order confirming the Hand award on September 14, 1973.

The instant action, brought by Blessings on June 28, 1973, seeks, inter alia, a determination that defendants' patent is invalid and not infringed by plaintiff's product. Blessings alleges, in an affidavit submitted by John F. Ross, its vice president, that although it has terminated its license with defendants, it still desires to market a headrest cover which it deems outside the scope of their patent. It is further alleged, by Ross, that Blessings "possesses the necessary manpower, knowhow and equipment to manufacture this product and has, in fact, manufactured the product since termination of the license." Blessings has, understandably, been reluctant to offer the product to its customers because it remains uncertain whether it infringes defendants' patent.

I.

In the first branch of their motion to dismiss,[2] defendants contend that there is no actual controversy between the parties sufficient to sustain jurisdiction under the Declaratory Judgment Act. They argue, in essence, that the parties have been involved in nothing more than a dispute over royalties under a licensing agreement. That dispute apparently has been resolved by arbitration, and defendants claim that they have not threatened plaintiff with an infringement suit subsequently.[3] In view of this, defendants contend that no actual controversy now exists, and that Blessings merely seeks an advisory opinion on the validity of their patent.

It is well settled that the Declaratory Judgment Act only permits the federal courts to entertain actual, concrete controversies, and not hypothetical

2. Insofar as the motion considers matters outside the pleadings, it is more properly deemed one for summary judgment under Rule 56.

3. Defendants also state, in furtherance of their contention, that plaintiff no longer manufactures the product that was the subject of the past controversies. This allega-

tion, however, is made "upon information and belief" at p. 13 of their memorandum in support of their motion to dismiss. It cannot overcome the probative force of the Ross affidavit, noted above, which unequivocally states that plaintiff "has, in fact, manufactured the product since termination of the license."

questions. Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). While that may seem simple enough, the distinction between the former and the latter, as our Court of Appeals has noted, is one of degree, to be determined on a case by case basis. Wembley, Inc. v. Superba Cravats, Inc., 315 F.2d 87 (2nd Cir. 1963). In the patent field, the Act has had the salutary effect of preventing patentees from threatening alleged infringers with lawsuits without ever risking a test of the validity of their patent. For this reason, as well as others, our Court of Appeals has liberally construed the "actual controversy" requirement. Wembley, Inc. v. Superba Cravats, Inc., supra.

■ There appear to be two prerequisites to a finding of an actual controversy in patent cases. First, the patentee (usually the defendant) must have charged plaintiff with infringement or at least threatened an infringement suit, either directly or indirectly. Second, the plaintiff must actually have produced or made substantial preparations to produce the accused article; a vague and unspecific desire to market a product is insufficient. Muller v. Olin Mathieson Chemical Corp., 404 F.2d 501 (2nd Cir. 1968); Wembley, Inc. v. Superba Cravats, Inc., supra; Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc., 439 F.2d 871 (1st Cir. 1971); General Tire & Rubber Co. v. Jefferson Chemical Co., 46 F.R.D. 607 (S.D.N.Y.1969).

A brief survey of the applicable case law in this circuit is sufficient to substantiate Professor Moore's observation that "the 'charge of infringement' has been given a very liberal interpretation." [4] 6A Moore's Federal Practice ¶ 57.20. In Muller v. Olin Mathieson Chem-

ical Corp., supra, the court found that such a charge had been adequately established on the following facts. The parties had been engaged in numerous patent interference proceedings over a long period; plaintiffs had received a letter from an American licensee requesting indemnification against any infringement actions defendant might bring against it; defendant had sent plaintiffs' British licensee a letter offering a license and hinting at a charge of infringement. The court noted that "defendant has put plaintiffs in a position where they must either abandon use of their patent or, if they exploit the patent, must run the risk of being liable to defendant for potential damages whenever defendant should see fit to sue for infringement. . . . To deny that a 'case or controversy' exists in this situation is to 'ignore the realities of business life.'" 404 F.2d at 501, 505.

In Wallace & Tiernan, Inc. v. General Electric Company, 291 F.Supp. 217 (S. D.N.Y.1968), Judge Frankel suggested a similarly broad reading of the "charge of infringement" requirement. In that case it was undisputed that defendant had never charged plaintiff with infringement or contributory infringement, and would make no such charges in the future. But the court rejected the view that "the useful remedy of declaratory relief must always be confined to a plaintiff who has himself been charged or threatened as an infringer." Plaintiff had invested $350,000 in the development of a product the chief potential use of which was in a chemical composition which defendant claimed to be covered by its patent. Under such circumstances, Judge Frankel held that "the plaintiff here is unquestionably hurt by the conduct and asserted legal

4. This very formulation has been adopted by our Court of Appeals. See Broadview Chemical Corp. v. Loctite Corp., 417 F.2d 998 (2nd Cir. 1969), cert. denied 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970); Muller v. Olin Mathieson Chemical Corp., supra. See also Wallace & Tiernan, Inc. v. General Electric Co., D.C., 291 F.Supp. 217;

Components, Inc. v. Western Electric Company, 318 F.Supp. 959 (D.Me.1970); Thiokol Chemical Corp. v. Burlington Industries, Inc., 319 F.Supp. 218 (D.Del.1970), affd. 448 F.2d 1328 (3rd Cir. 1971), cert. denied 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 662 (1972).

claims of the defendant. Where the immediately produced result of defendant's announced position is . . . the loss of substantial business by plaintiff, it is 'idle to call the injury indirect or remote.' " 291 F.Supp. at 222.

In Broadview Chemical Corp. v. Loctite Corp., 417 F.2d 998 (2nd Cir. 1969), cert. denied, 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970), the parties had been engaged in litigation for at least five years concerning the validity of various of the defendant's patents and claims by the plaintiff (usually unsuccessful) that its products did not infringe them. When plaintiff undertook to market a new product and sought a declaratory judgment of noninfringement, the court found the "actual controversy" requirement met by this past history of litigation considered together with several letters from defendant to plaintiff and its customers expressing the view that plaintiff was not capable of preparing a noninfringing product.

The most recent expression of the views of our Court of Appeals can be found in Blackman v. Hadron, Inc., 450 F.2d 781 (2nd Cir. 1971). There, the patentee had originally brought infringement charges against both direct and contributory infringers. The action against the direct infringer had been settled, and by the terms of the settlement "all past infringements were forgiven." This presented to the court the question of whether an actual controversy then remained between the patentee and the contributory infringer. The court conceded that absent direct infringement, no action for contributory infringement can be maintained; nevertheless, it found that "the grievous effects of unresolved charges of infringement already made linger on." It determined that forgiveness of past infringements, and the termination of an action against the direct infringer were nevertheless not equivalent to a determination of noninfringement. So long as the con-

tributory infringer was open to an infringement suit, and its customers thus vulnerable to intimidation, a justiciable controversy existed.

■ As I read these cases, it appears that any lingering possibility of an infringement charge is sufficient to support the finding of an actual controversy so long as the plaintiff can demonstrate some actual harm to its business. The *Blackman* case leaves unclear precisely what steps by the patentee are sufficient to constitute a threat of infringement, and appears to suggest that past threats alone are sufficient. In any event, the instant case does not test the outer limits of justiciability. It is clear that during the second, or Hand arbitration, the defendants did accuse Blessings of infringement. At pp. 55–56 of the transcript of the arbitration proceedings,[5] counsel for defendants stated that a specimen of plaintiff's product did come within their patent. Furthermore, the arbitrator devoted considerable attention in his opinion to the question of whether certain of plaintiff's products infringed the Altman and Teitzman patent; he concluded they did not. Thus defendants' representation that they have not threatened an infringement suit against Blessings or its customers is not sufficient to defeat jurisdiction here. The question of infringement was raised during the arbitration proceedings, and has not yet been authoritatively resolved; it thus hovers over the relations between the parties as it did in *Blackman*. In determining justiciability I am also entitled to consider, as the court did in *Broadview*, the prior history of litigation between the parties. That history reveals no small willingness to contest differences in legal fora, and offers no hint that relations between the parties have reached quiescence. I therefore hold that the threat of infringement charges by defendants is sufficiently tangible to create an actual controversy within the

5. Annexed as Exhibit "E" to plaintiff's memorandum of law.

meaning of the Declaratory Judgment Act.[6]

The cases on which defendants rely are all readily distinguishable. In Drew Chemical Co. v. Hercules Incorporated, 407 F.2d 360 (2nd Cir. 1969), defendant had inspected plaintiff's product and had then stated in writing that such product did not infringe its patent. In Walker Process Equipment, Inc. v. FMC Corporation, 356 F.2d 449 (7th Cir. 1966), there had been a previous determination by the Fourth Circuit that plaintiff's product did not infringe defendant's patent. In neither of these cases, then, could plaintiff justifiably allege any reasonable apprehension of an infringement suit by the patentee. In W. R. Grace & Co. v. Union Carbide Corporation, 319 F.Supp. 307 (S.D.N.Y. 1970), Judge Tenney dismissed the declaratory judgment action in large part, it appears, because plaintiff was a licensee of the defendant. In so doing he was following the settled rule that a patentee cannot bring infringement charges against his licensee with respect to the licensed patents. Components, Inc. v. Western Electric Company, 318 F.Supp. 959 (D.Me.1970); Thiokol Chemical Corp. v. Burlington Industries, Inc., 313 F.Supp. 253 (D.Del.1970). Had there been no license, Judge Tenney noted, a

justiciable controversy could have existed. In none of these cases then, was the plaintiff vulnerable in any meaningful sense to an infringement suit. Such is not the case here.

## II.

■ Defendants' second contention deserves only passing mention. Because the most due them in royalties is $6,000, they argue that this court lacks subject matter jurisdiction since the amount in controversy is less than ten thousand dollars. The simple answer to this contention is that the jurisdictional premise of a suit for declaratory judgment of patent invalidity is 28 U.S.C. § 1338 (a).[7] It is well settled that this statute vests jurisdiction in the district courts regardless of the amount in controversy. Dal Bac, Ltd. v. Firma Astorwerk Otto Berning & Co., 244 F. Supp. 513 (S.D.N.Y.1965); Utah Radio Products Co. v. Boudette, 78 F.2d 793 (1st Cir. 1935); General Tire and Rubber Co. v. Watkins, 326 F.2d 926 (4th Cir. 1964); 1 Moore's Federal Practice ¶ 0.90 [1] fn. 17.

Defendants' motion to dismiss for want of an "actual controversy" or, alternatively, for lack of subject matter jurisdiction is therefore denied.

It is so ordered.

6. A strikingly similar situation is found in Robin Products Company v. Tomecek, 465 F.2d 1193 (6th Cir. 1972). Plaintiff held a license under defendant's patent but had paid no royalties, contending that the defendant had breached his warranty of title to the invention. Defendant then commenced arbitration proceedings to recover the royalties and shortly thereafter exercised its right to terminate the license. Plaintiff then brought a declaratory judgment action and obtained an order staying the arbitration. At the hearing on defendant's motion to dismiss, plaintiff alleged that defendant had demanded post termination royalty payments. The Sixth Circuit held that this alleged demand, if not an implicit charge of infringement, was conduct from which an infringement charge could be inferred.

The charge of infringement in the instant case was, of course, far more explicit.

7. 28 U.S.C. § 1338(a):
   The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases.