**SHERWOOD MEDICAL INDUSTRIES, INC., Appellant,**

v.

**DEKNATEL, INC., Appellee.**

No. 74–1693.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1975.

Decided March 5, 1975.

Rehearing and Rehearing En Banc Denied March 25, 1975.

Paul L. Gardner, Los Angeles, Cal., for appellant.

Roberts B. Larson, Arlington, Va., for appellee.

Before BRIGHT, ROSS and STE-PHENSON, Circuit Judges. *

ROSS, Circuit Judge.

Sherwood Medical Industries, Inc. (Sherwood) brought this action against Deknatel, Inc., seeking a declaratory judgment that certain patents held by Deknatel are invalid, unenforceable and not infringed by Sherwood. The district court[1] found that there was no "actual controversy" between the parties as required by the Declaratory Judgment Act, 28 U.S.C. § 2201, and granted a summary judgment for Deknatel dismissing the cause for lack of jurisdiction. This appeal followed.

The complaint, affidavits and depositions which were before the court on the motion to dismiss[2] reveal the following uncontroverted facts:

Deknatel is the owner of two United States patents (numbers 3,363,626 and 3,363,627) each of which covers an "underwater drainage apparatus." Deknatel utilizes these patents in the manufacture and sale of chest drainage devices used for the evacuation of fluids and

1. The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri.

2. Deknatel's motion to dismiss was made under Fed.R.Civ.P. 12(b). However, matters outside the pleading were heard and admitted into evidence by the court so that the motion was properly treated as one for summary judgment under Fed.R.Civ.P. 56. See Fed.R. Civ.P. 12(b).

gases from the pleural cavities of human beings during surgery.

Sherwood also desires to market a chest drainage device throughout the United States and during the past several years has spent in excess of $100,000 in a research and development program in connection with its drainage apparatus. It has built approximately one hundred prototype units and has placed around thirty of these in St. Louis hospitals for testing. Additionally, Sherwood has ordered and plans to order more relatively expensive equipment, materials and promotional literature for the manufacture and marketing of these items. It also expects to expand its manufacturing facilities and hire additional employees in the near future.

On April 16–18, 1973, Sherwood exhibited one of its prototype units at a convention of the American Association for Thoracic Surgery in Dallas, Texas. This was brought to the attention of Deknatel's patent attorney who sent a letter to Sherwood on April 23, 1973. This letter[3] stated in rather circumspect language that Deknatel wanted to determine whether Sherwood's new device might infringe its patents and noted that Deknatel had in the past litigated these patents. It further requested a sample for inspection.

On May 1, 1973, Sherwood's patent attorney responded in writing to the April 23 letter, refusing to send a sample to Deknatel because the new "thoracic drainage device is not at present available to the medical community." Nonetheless, Deknatel made some effort to obtain a sample and eventually obtained more than one through other sources.

In January, 1974, Mr. Byron Economidy, a product engineer at Sherwood who was in charge of that company's chest drainage device project, attended a meeting of the Society of Thoracic Surgeons in Los Angeles. While there he met and spoke with Mr. Robert Smith, director of new products for Deknatel. In their brief conversation, according to Economidy's uncontradicted affidavit and deposition testimony, Smith told him that Sherwood's chest drainage unit would infringe Deknatel's patents and that Deknatel's attorneys had advised their client that Sherwood's unit did infringe the patents.

The district judge concluded that on these facts there was no actual controversy. We disagree and reverse the summary judgment of dismissal.

■ The Declaratory Judgment Act's requirement of an "actual controversy" is no more than a recognition that the Constitution limits the exercise of judicial power to "cases" and "controversies" in the constitutional sense. Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 239–240, 57 S.Ct. 461, 81 L.Ed. 617 (1937); Dewey & Almy Chemical Co. v. American Anode, Inc., 137 F.2d 68, 70 (3d Cir.), cert. denied, 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454 (1943). Under this standard

---

**3.** The letter was addressed to Mr. Howard Wickstra, President of the Aloe-Division of Sherwood Medical Industries, Inc. and was signed by Roberts B. Larson, a patent attorney for Deknatel. It reads as follows:

As you perhaps know from the Deknatel-Bentley litigation a few years back, we represent Deknatel. They have just called to our attention the fact that your company exhibited your new thoracic drainage device in Dallas on April 16–18 at the American Association for Thoracic Surgery. I understand that it was indicated that the device would soon be on the market.

Knowing that your company, through your patent counsel, is very patent conscious regarding this type of equipment, we would trust that the new device was designed so as to avoid infringement. If this be so, and particularly since the device has already been exhibited and will soon be on the market, it would seem to us you would welcome the opportunity to assure us of this fact by providing us with a sample device and/or drawings and descriptive matter so that we may examine the same and assure ourselves that there is no infringement of the Deknatel patents.

Naturally, we shall be happy to pay for one of the devices at the price you plan to charge when the devices go on the market.

[t]here must be a concrete case touching the legal relations of parties having adverse legal interests, and susceptible "of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged." The distinction is between a case "appropriate for judicial determination" on the one hand, and a "difference or dispute of a hypothetical or abstract character" on the other.

Dewey & Almy Chemical Co. v. American Anode, Inc., *supra*, 137 F.2d at 70, *citing*, Aetna Life Insurance Co. v. Haworth, *supra*, 300 U.S. at 240–241, 57 S.Ct. 461.

Applying these general principles in any given case is somewhat difficult; for, as the Supreme Court stated in Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941):

The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

■ Generally speaking, in patent cases it is held that there is such an "actual controversy" only if the patentee-defendant in the declaratory judgment lawsuit has either expressly or impliedly charged the plaintiff with infringement of its patent. However, the requirement of a charge of infringement is liberally construed. Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc., 439 F.2d 871, 874 (1st Cir. 1971); Muller v. Olin Mathieson Chemical Corp., 404 F.2d 501, 504 (2d Cir. 1968).

In Robin Products Co. v. Tomecek, 465 F.2d 1193, 1195 (6th Cir. 1972), Chief Judge Phillips of the Sixth Circuit stated:

In actions of the type herein involved, a justiciable controversy is made out upon plaintiff's showing of "any indirect or implicit or covert charge [of infringement] or threat [of suit or] . . . any conduct or course of action from which any charge or threat could be inferred." Goodrich-Gulf Chemicals, Inc. v. Phillips Petroleum Co., 376 F.2d 1015, 1019 (6th Cir. 1967).

And in discussing what type of conduct or course of action should be deemed to be a charge the court in the *Robin Products* case said:

The appropriate test is whether the course of action would be regarded by a reasonable man as a charge of infringement and was so regarded by the party seeking declaratory relief. *Id.* at 1196.

This same test is expressed somewhat differently in Japan Gas Lighter Association v. Ronson Corp., 257 F.Supp. 219, 237 (D.N.J.1966).

Such an action must be based on the plaintiff's well grounded fear that should he continue or commence the activity in question, he faces an infringement suit or the damaging threat of one to himself and his customers. The touchstone is a *reasonable apprehension.* (Emphasis in original.)

*See also* Medtronic, Inc. v. American Optical Corp., 327 F.Supp. 1327, 1333 (D.Minn.1971); Owatonna Manufacturing Co. v. Melroe Co., 301 F.Supp. 1296, 1299 (D.Minn.1969).

■ In summary, an "actual controversy" exists if there has been a charge of infringement. However, such a charge need not be express and can be

found in any conduct or course of action on the part of the patentee which would lead a reasonable man to fear that he or his customers face an infringement suit or the threat of one if he continues or commences the activity in question.

■ Finally, in applying these rules to fact situations before them to determine whether or not there is an "actual controversy" courts should make a pragmatic judgment, aware of the business realities that are involved. *See* Wallace & Tiernan, Inc. v. General Electric Co., 291 F.Supp. 217, 221 (S.D.N.Y.1968).

■ In the instant case Sherwood points to four actions on the part of Deknatel which led it to have a "reasonable apprehension" that it would be faced with an infringement suit if it commenced marketing its chest drainage device. First, Deknatel had brought an action for infringement of these patents against another competitor in this field around 1969. Second, Deknatel's patent attorney wrote the April 23, 1973, letter to Sherwood, subtly pointing out that Deknatel had sued in the past to protect its patents and that it wished to determine whether or not Sherwood's device might also infringe the patents. Third, even after Sherwood refused to send a sample, Deknatel went to some effort to obtain some of Sherwood's units for examination. Fourth, a high ranking employee of Deknatel, its director of new products, told Sherwood's project manager that the Sherwood devices infringed the patents and that this was the opinion of Deknatel's attorneys also.

We agree with the trial court that none of these acts standing alone would be enough to constitute a charge of infringement. The mere fact that the patentee has litigated the patents in the past does not show that he intends to do so again against the declaratory judg-

ment action plaintiff. Drew Chemical Co. v. Hercules Inc., 407 F.2d 360, 362 (2d Cir. 1969). Likewise, sending a letter requesting a sample to examine for possible patent infringement or taking other steps to obtain a sample for such examination is not enough to lead to a "reasonable apprehension" of a charge of infringement. American Needle & Novelty Co. v. Schuessler Knitting Mills, Inc., 379 F.2d 376, 379 (7th Cir. 1967). And "[a] charge of infringement made by agents who have no authority to make it does not create an actual controversy." Dr. Beck & Co. G.M.B.H. v. General Electric Co., 317 F.2d 538, 539 (2d Cir. 1963).[4]

However, in determining whether a charge could be reasonably inferred the court must look at the *entire course of action* and *all* of the defendant's relevant conduct. Such a comprehensive view in this case reveals that Deknatel's actions reasonably told Sherwood that Deknatel was completely serious about protecting its patents on the chest drainage device and was willing to take competitors in this field to court in its efforts to do so. Also Sherwood could infer that Deknatel thought it quite possible that Sherwood's device did, in fact, infringe. Finally, the comments of the director of new products of Deknatel to the effect that both he and Deknatel's attorneys were of the opinion that Sherwood's device infringed, coupled with its prior information, could certainly lead to a "reasonable apprehension" that Sherwood faced an infringement lawsuit or a threat of one.

It is true that these comments could not be directly imputed to Deknatel. However, we find it significant that Deknatel has known at least since early April, 1974, when the complaint was filed, that Sherwood was very concerned

---

4. The affidavits and deposition testimony make clear that Smith had no express authority from Deknatel to level a charge of patent infringement on behalf of that company. We also concur in the district court's finding that Smith had no apparent authority at the time

he made his statements. Deknatel, the principal, had engaged in no conduct at that time which would cause Sherwood to believe that it consented to Smith's speaking for it on patent matters.

about Smith's statement and considered it to be a charge of infringement and, yet, has never challenged the truth of the statement even though it has had three samples of the device available for examination. In this respect this case is similar to Telechron, Inc. v. Parissi, 97 F.Supp. 355, 357 (N.D.N.Y.1951), in which one of Parissi's attorneys sent a letter to Telechron's representative stating his opinion that certain items manufactured by Telechron infringed Parissi's patents. This attorney later stated by affidavit that the letter merely expressed his personal opinion and not that of his client and that he had had no authority to write such a letter. Nonetheless, the court took into consideration the fact that the patentee had not disclaimed his attorney's statement nor indicated that he himself did not claim infringement. *See also* Drew Chemical Co. v. Hercules Inc., *supra,* 407 F.2d at 362. We agree with this analysis and believe that Smith's statement combined with Deknatel's failure to repudiate it can be considered as part of the course of action of the patentee.

When all of these factors are viewed together as one course of action it must be concluded that Sherwood has good reason to believe that Deknatel will sue or threaten to sue it for patent infringement if it commences marketing its chest drainage device. The existence of this "reasonable apprehension" establishes that there is an "actual controversy" between the parties.

 To view the facts of this case any differently would be to totally ignore the realities of business life. It would also contravene the well settled rule that the Declaratory Judgment Act should be liberally construed to accomplish its purpose of providing a speedy and inexpensive method of adjudicating legal disputes without invoking coercive remedies and that it is not to be interpreted in any narrow or technical sense. *See, e. g.,* Dewey & Almy Chemical Co. v. American Anode, Inc., *supra,* 137 F.2d at 70; Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937).

For the foregoing reasons the district court's summary judgment dismissing this case for lack of an actual controversy is reversed and the cause is remanded for further proceedings.