**VOLKSWAGEN OF AMERICA, INC.,**
**Plaintiff,**

**v.**

**ENGELHARD MINERALS & CHEMICALS CORPORATION,**
**Defendant.**

**No. 74 Civ. 4966 KTD.**

United States District Court,
S. D. New York,
April 18, 1975.

Brumbaugh, Graves, Donohue & Raymond, New York City, for plaintiff by Francis J. Hone, New York City, of counsel.

Fish & Neave, New York City, for defendant by William K. Kerr, David W. Plant, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Defendant Engelhard Minerals & Chemicals Corporation (hereinafter "Engelhard") has moved, pursuant to Fed.R.Civ.P. 12(b)(1), to dismiss for lack of subject mattter jurisdiction the complaint filed by Volkswagen of America, Inc. (hereinafter "VWA") on November 12, 1974, in which VWA seeks a declaratory judgment (28 U.S.C. § 2201) that the catalytic converter used in 1975 Volkswagens sold in the United States does not infringe two United States patents held by Engelhard (Nos. 3,441,381 and 3,565,830). VWA's suit also claims alternatively, that the two Engelhard patents are invalid.

Volkswagen of America is a wholly-owned subsidiary of Volkswagenwerk Aktiengesellschaft (Volkswagen of Germany, hereinafter "VWG") and is the exclusive importer and distributor of

Volkswagen automobiles in the United States.

Affidavits filed by the parties with regard to the instant motion indicate that sometime in 1972 Engelhard approached VWG about possible licensing of Engelhard patents for use in design and manufacture of catalytic converters to be installed in Volkswagens beginning with the 1975 model year. Discussions and correspondence followed, all against the background of the tighter anti-pollution standards promulgated by the federal government for new cars sold in the United States after January 1, 1975. One such meeting occurred on December 13, 1973 in Wolfsburg, Germany. Volkswagen of Germany was not receptive to Engelhard's offers of licenses and had its own plans for a converter which assertedly was somewhat different than Engelhard's. The possibility of an infringement action by Engelhard was apparently discussed, but Engelhard claims that it did not have sufficient information about the design or composition of the Volkswagen catalytic converter to make an informed judgment about whether the catalytic converter would infringe Engelhard patents.

Thereafter, on March 18, 1974, VWG wrote to Engelhard, enclosing a drawing of the catalytic converter it planned to use and explaining why it did not feel licenses from Engelhard were necessary. Volkswagen of Germany claimed that its catalytic converter had a significantly different structure then Engelhard's and therefore did not come within patent no. 3,441,381. It also asserted that patent no. 3,565,830 was invalid in light of prior art.

Although Engelhard now characterizes the information VWG provided as fragmentary, the drawing and letter generated an extended and highly technical response from Joseph Feldstein of Engelhard (dated April 11, 1974) explaining in detail why the Volkswagen catalytic converter would still come within patent no. 3,441,381. He also claimed that patent no. 3,565,830 was not void for obviousness. Feldstein stated in part:

"Volkswagen may have utilized some engineering skill to adapt the catalyst to their automobile model but this does not avoid the Engelhard patent [3,441,381]. No doubt a judge when viewing the Volkswagen structure, with its elements performing in the same manner and for the same purpose as those of the patent, would conclude that you in fact failed to devise a structure outside the coverage of the patent."

\*    \*    \*    \*    \*    \*

"Therefore, we are of the opinion that the catalyst system to be utilized in the Volkswagen infringes the claims of our patent. [No. 3,441,381]"

\*    \*    \*    \*    \*    \*

"You expressed the opinion that Engelhard's patent No. 3,565,830 is invalid in view of the Johnson et al. publication. We disagree. . . ."

\*    \*    \*    \*    \*    \*

". . . because Engelhard is a United States patentee, we have recourse to the Tariff Act, which can thwart the importation into the United States of an infringing device."

\*    \*    \*    \*    \*    \*

[After listing the major auto companies licensed by Engelhard, the letter concludes:] "We intend to assert and defend our patent rights not only as a matter of corporate policy but also because we have a firmly established licensing program. At the same time, we stand prepared, as we advised you in December, to offer you a license under our patents upon terms and at royalties we are certain you will find very reasonable. Inasmuch as we too would like the discussions between our companies to be concluded in mutual agreement, we are prepared to meet again with you to discuss a license agreement."

Volkswagen of Germany persisted in its decision not to obtain licenses from

Engelhard (letter dated July 5, 1974), but Engelhard instead arranged another meeting on August 21, 1974. Another license offer was made, and again it was rejected. (Letter dated Sept. 5, 1974). Volkswagen of Germany, in rejecting the offer, noted in part:

". . . we believe that much more is at stake than merely the costs of the action [to Engelhard]. We believe that the overall situation on the catalyst market does not permit, in the interest of Engelhard, legal action against us on the basis of your position which, we are convinced, does not stand a chance and whereby especially the destruction of patent No. 3,665,830 is risked."

One final meeting, initiated by VWG, occurred between representatives of Engelhard and legal counsel for both VWG and the plaintiff, VWA. Again no agreement was reached. Engelhard claims that at the meeting it carefully avoided making any claim or charge of infringement. Engelhard also claims that at this meeting it renewed a request for a sample Volkswagen catalytic converter to enable Engelhard to appraise it in light of the Engelhard patents, but Engelhard states that no sample was ever supplied.

The meeting resulted in no agreement between the parties. A final letter passed from Engelhard to counsel for VWG and VWA, explaining why Engelhard believes that patent no. 3,440,381 is valid over prior art.

Shortly thereafter, VWA filed this action for a declaratory judgment that it had not infringed the Engelhard patents and in the alternative that such patents were invalid.

■ Engelhard's basic argument in support of its motion to dismiss is that no justiciable controversy exists in this case and that therefore this Court does

not have subject matter jurisdiction under 28 U.S.C. § 2201. It argues that no threat or charge of infringement has been made, either to VWG or particularly to VWA, which is the only plaintiff in this suit. It claims that any language which could be construed as a threat should be discounted, because Engelhard has never had sufficient information about the Volkswagen catalytic converter to make a reasonable judgment as to whether it infringed the Engelhard patent. See *American Needle & Novelty Co. v. Schuessler*, 379 F.2d 376, 379 (7th Cir. 1967).[1]

■ This circuit has held that "[t]he difference between definite, concrete, and substantial controversies which are justiciable, and hypothetical, abstract, or academic ones which are not justiciable, is one of degree, to be determined on a case by case basis." *Muller v. Olin Mathieson Chemical Corporation*, 404 F.2d 501, 504 (2d Cir. 1968). In patent cases, a justiciable controversy has been found to exist where a patentee has "charged" a company with infringement, either directly or indirectly, provided that company has already begun to produce and sell the allegedly infringing device, or made substantial preparations to do so. *Id.; Blessings Corp. v. Altman*, 373 F.Supp. 802, 805 (S.D.N.Y. 1974). The requirement that there have been a "charge of infringement" is liberally construed, *Muller v. Olin Mathieson Chemical Corp.*, 404 F.2d at 504. See also, *Van Wyck Int'l Corp. v. Scoville Mfg. Co.*, 184 U.S.P.Q. 572, 573 (S.D.N.Y.1974); 6A Moore, *Federal Practice* ¶ 57.20 (2d ed. 1973).

■ This Court notes initially that Engelhard's argument that VWA must show threats of infringement made directly to itself, rather than to VWG, is without merit. Indirect, as well as direct, charges of infringement may be

---

1. "The owner of a patent should have the privilege of making a fair investigation as to the possible infringement of his patent without calling down on his head the undertaking of a defense of an expensive and burdensome declaratory judgment suit alleging invalidity and non-infringement."

sufficient to support a declaratory judgment action challenging the validity of a patent, see *Muller v. Olin Mathieson Chemicals Corporation, supra,* and certainly any infringement charge against VWG with respect to cars imported into the United States creates a very significant risk of suit for VWA, the wholly-owned subsidiary of VWG and the sole importer and distributor of Volkswagens in the United States.

In its complaint VWA makes only general allegations that Engelhard made charges of infringement and that Engelhard threatened to take legal action if 1975 Volkswagens, equipped as planned, were imported into the United States. However, the affidavits and exhibits filed by the parties with respect to the motion to dismiss must be considered with the complaint.

With respect to patent no. 3,441,381, the letter sent by Joseph Feldstein of Engelhard, dated April 11, 1974, and quoted in part earlier, strongly supports VWA's claim that charges of infringement and threats to sue have been made by Engelhard in connection with the catalytic converter for 1975 Volkswagens. Moreover, the extended technical discussion by Feldstein therein with respect to patent no. 3,441,381 as it relates to the structure of the planned Volkswagen catalytic converter tends to rebut Engelhard's claim that it was not given sufficient information to make a reasonable judgment as to whether patent no. 3,441,381 would be infringed. Although Engelhard was allegedly never given a sample of the converter, VWG planned to use, a reasonable reading of the complaint is that the structure set forth in Volkswagen's letter and drawing of March 18, 1974, and in its letter of July 5, 1974, is a fair representation of the converter actually used by VWG.[2]

Furthermore, the Feldstein letter and the statements contained therein seem to constitute more than mere "jawboning"

which this Circuit has indicated should not alone be a basis for subjecting a patentee to the burdens of defending a declaratory judgment action such as this. See *Drew Chemical Co. v. Hercules, Inc.,* 407 F.2d 360 (2d Cir. 1969). Engelhard appears to have given VWG or VWA little reason to believe that the charge of infringement and threat to sue contained in that letter should no longer be taken seriously.

■ The Court finds that an actual controversy exists with respect to the infringement of or validity of defendant's patent, no. 3,441,381 and that this Court has subject matter jurisdiction over plaintiff's claims relating to this patent. Defendant's motion to dismiss this part of plaintiff's claim is therefore denied.

The situation with respect to patent no. 3,565,830 is somewhat different. Volkswagen of Germany's letter of March 18, 1974 to Engelhard states only that, with respect to patent no. 3,565,830, "we as well as our suppliers are of the opinion that this patent is not legally valid so that for this reason alone, an infringement is not to be assumed. Our opinion that this patent is not enforceable is supported, among others, by the fact that the subject of the patent was obvious. . . ." Subsequent communications between the parties discuss further the validity of this patent. It does not appear, however, that Engelhard ever did more than insist on the validity of this patent. There is no indication of when Engelhard might have charged VWG with infringement thereof or whether Engelhard ever obtained sufficient information to be able reasonably to make such a charge. Moreover, VWA does not admit in its complaint that the manufacture and design of its converter come within that patent, assuming it is valid.

■ With respect to plaintiff's claims involving defendant's patent no. 3,565,830, I am not satisfied that an ac-

---

2. Of course the 1975 model Volkswagen cars are now on the market in the United States and seem to be available to defendant for analyses.

tual controversy exists sufficient to establish jurisdiction, and in any event, without a greater showing of a controversy, this Court, in its discretion, believes that it should not exercise its declaratory judgment jurisdiction with regard to the claims involving this patent. Defendant's motion to dismiss is therefore granted with respect to the claims involving patent no. 3,565,830. Such dismissal, however, is without prejudice to plaintiff to replead the cause within 60 days.

It is so ordered.