MINE SAFETY APPLIANCE COMPANY
and Catalyst Research Corporation,
Plaintiffs,

v.

ENERGETICS SCIENCE, INC.,
Defendant.

No. 75 Civ. 4925.

United States District Court,
S. D. New York.

June 28, 1976.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiffs; Arland T. Stein, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., of counsel.

Greenwald, Kovner & Goldsmith, New York City, for defendant; Thomas P. Sarro, Larson, Taylor & Hinds, Arlington, Va., of counsel.

LASKER, District Judge.

Mine Safety Appliance Company and Energetics Science, Inc. are competing producers of carbon monoxide detection and monitoring equipment which make on-the-spot measurements of carbon monoxide in a particular area. Mine Safety's product, the "Model 70," is a compact, portable device which was introduced approximately in June, 1975. Energetics for some time be-

fore that date marketed the "Ecolyzer" which is larger than the "Model 70" but performs the same functions. Energetics is presently introducing a more compact version of the "Ecolyzer"—the "Hipster"—which is designed to compete with the "Model 70." (Affidavit of Thomas E. Kreichelt, Senior Environmental Health Engineer for Bethlehem Steel Corporation, ¶¶ 3–5). Energetics owns two patents covering such equipment and Mine Safety and Catalyst Research Corporation, which manufactures Mine Safety's equipment, sue Energetics for a judgment declaring its patents invalid, not infringed, and/or unenforceable. Energetics moves to dismiss pursuant to Rule 12(b), Federal Rules of Civil Procedure, for lack of subject matter jurisdiction on the ground that there is no case or controversy between the parties.

The existence of an actual controversy between the parties is, of course, necessary to sustain jurisdiction under the Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201. *Muller v. Olin Mathieson Chemical Corp.,* 404 F.2d 501, 504 (2d Cir. 1968); *Dr. Beck & Co., G.M.B.H. v. General Electric Co.,* 317 F.2d 538 (2d Cir. 1963). In patent matters, case law has established two prerequisites to a finding of an actual controversy: (1) the owner of the patent (usually the defendant) must have charged plaintiff with infringement or at least threatened an infringement suit, either directly or indirectly; (2) the plaintiff must actually have produced or prepared to produce the accused article. *Muller v. Olin Mathieson Chemical Corp., supra; Blessings Corp. v. Altman,* 373 F.Supp. 802, 850 (S.D. N.Y.1974).

There is no dispute that Mine Safety's "Model 70" satisfies the second requirement of this test because it has already produced large numbers of the device. (See Affidavit of John Sherwin, Director of Product Planning Instrument Group, for Mine Safety, ¶ 3) Although Energetics vigorously denies that it has charged or threatened to charge Mine Safety with infringement, courts have given this requirement of a direct or indirect threat "a very liberal

interpretation" (6A Moore, *Federal Practice* ¶ 57.20 at p. 3119 (2d ed. 1966) cited in *Muller v. Olin Mathieson Chemical Corp., supra* ) and the affidavits submitted by both parties establish that at the least an indirect charge of patent infringement has been made.

On June 20, 1975, Mr. Harry Lieb, President of Energetics, sent a registered letter to the President of Mine Safety, which was styled as a general notice to the industry, informing Mine Safety that Energetics owned the two U.S. patents involved in this suit. Lieb sent the identical letter to Mine Safety again on July 17, 1975 by registered mail, return receipt requested. (Ex. A., Ex. B., Affidavit of Arland T. Stein, counsel for plaintiffs, ¶ 3; Ex. A. to Defendant's Memorandum in Support of Motion)

Although these letters did not on their face purport to charge Mine Safety with infringement, threats of such a charge were subsequently communicated to one of Mine Safety's potential customers, Bethlehem Steel Corporation. According to the affidavit of Thomas Kreichelt, Senior Environmental Health Engineer for Bethlehem Steel Corp.'s Bethlehem plant, when Kreichelt compared the Model 70 and the Hipster and told Energetics of some problems Bethlehem Steel was having with the "Hipster", an employee of Energetics, Mr. Holtzberg, informed Kreichelt "that Energetics had been advised by their attorneys that the Model 70 may have some 'problems' with respect to the Energetics patents and that their attorneys were then presently considering suit against Mine Safety Appliances for infringement by the Model 70." (¶ 5) Kreichelt then asked an officer at Mine Safety "whether there was any substance to Energetic's charge of patent infringement." (¶ 6) Bethlehem Steel returned the Model 70 to Mine Safety with "a comment to the effect that Mr. Kreichelt felt that the purchase of the Model 70 might result in an obsolete instrument if Energetics Science won a lawsuit against Mine Safety on the Model 70." (Affidavit of Harry Barlow, Senior Salesman for Mine Safety in the Philadelphia District, ¶ 5)

Moreover, at a convention in Alabama, an employee of Mine Safety was told by a representative of Energetics that "[t]here is a possibility that Mine Safety infringed on the Energetics 'Ecolyzer' when designing the Model 70." (Affidavit of James Wells, Jr., Senior Salesman for Mine Safety in the Atlanta District, ¶ 4)

█ Even if the letters which Energetics sent to Mine Safety were not intended, as Mine Safety asserts, to have an "in terrorim effect," the indirect charges of infringement communicated to Mine Safety employees and a potential customer establish a concrete controversy. The Court of Appeals in *Sherwood Medical Industries, Inc. v. Deknatal, Inc.*, 512 F.2d 724, 727–28 (8th Cir. 1975) recently stated:

> "[A] charge [of infringement] need not be expressed and can be found in any conduct or course of action on the part of the patentee which would lead a reasonable man to fear that he or his customers face an infringement suit or the threat of one if he continues or commences the activity in question."

*Accord, Robin Products Co. v. Tomecek*, 465 F.2d 1193, 1196 (6th Cir. 1972). Courts have applied this test pragmatically in light of the business realities that are involved. *Sherwood Medical Industries, Inc. v. Deknatal, Inc., supra*, 512 F.2d at 728; see *Wallace & Tiernan, Inc. v. General Electric Co.*, 291 F.Supp. 217, 221 (S.D.N.Y.1968). While none of the three incidents cited by Mine Safety alone would necessarily create an apprehension of an impending infringement suit, in combination they reasonably support Mine Safety's belief that it would soon face an infringement suit. Energetics asserts in opposition that it cannot be held responsible for unauthorized statements by its agents, but it has submitted no affidavit to establish that its employees were not authorized to tell Bethlehem Steel about a potential lawsuit against Mine Safety, and in any event it would be reasonable for Mine Safety employees at Bethlehem Steel to assume that Energetic's employees who made the statements were speaking on behalf of the company.

As the Court of Appeals for this Circuit stated in *Broadview Chemical Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir.), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1472, 22 L.Ed.2d 755 (1969):

> " 'The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.' Borchard, *Declaratory Judgments* at 299 (2d ed. 1941)."

In the circumstances, Mine Safety and its customers are entitled to know if the Model 70 infringes Energetic's patents and the Declaratory Judgment Act provides jurisdiction for such a determination.

The motion to dismiss is denied.

It is so ordered.