SUPERIOR STEEL DOOR & TRIM CO., INC., Plaintiff,

v.

BANNER METALS DIVISION OF INTERCOLE AUTOMATION, INC., Defendant.

No. 78 C 1615.

United States District Court, E. D. New York.

Sept. 28, 1979.

Bauer & Amer, P. C., Mineola, N. Y., for plaintiff.

Kirschstein, Kirschstein, Ottinger & Cobrin, P. C., New York City, for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

This is an action for declaratory judgment arising from a controversy between plaintiff, Superior Steel Door & Trim Company ("Superior"), and defendant, Banner Metals Division of Intercole Automation, Inc. ("Banner"), as to whether Banner is entitled to receive royalties resulting from the procurement by the Post Office of a "post-con" container from Superior. Defendant Banner has moved to dismiss the complaint pursuant to Rule 12, Federal Rules of Civil Procedure ("FRCP") or, in the alternative, for summary judgment pursuant to Rule 56, FRCP.

## FACTS

Superior, a New York corporation, and Banner, a California corporation, compete in supplying products to the United States Postal Service. One such product is the "post-con" container.

On January 25, 1977, Banner entered into a License Agreement with the Postal Service. Banner granted the Postal Service non-exclusive licenses in several Banner patents and patent applications, including the then pending patent application on the "post-con" container,[1] "to manufacture or have manufactured and to use or to have used and to sell Licensed Materials in the U.S., its territories and possessions" (License Agreement ¶ 1). The Postal Service agreed that "on authorizing a vendor to manufacture Licensed Materials," it would notify Banner of the name of the vendor and the number of licensed materials the vendor was authorized to manufacture. The Postal Service would also inform each vendor that its right to manufacture the licensed materials arose solely from the License Agreement. (*Id.* ¶ 2). Furthermore, the Postal Service agreed to pay Banner a royalty of 5% of the purchase price of each licensed item manufactured for the Postal Service if such materials were manufactured by a company other than Banner (*Id.* ¶¶ 4, 5). In short, the agreement provided that if the Postal Service contracted to have the "post-con", or other licensed materials, manufactured by a company other than Banner, presumably in compliance with the Banner specifications, the Postal Service would give Banner notice as to the outside company and the number of items to be manufactured and would pay a royalty to Banner at a rate of 5% of the purchase price of each item manufactured. If Banner manufactured the items, however, the Postal Service would pay Banner only the purchase price.

On July 20, 1977, the United States Postal Service issued Solicitation No. 104230/77/A/0086, for procurement of a "post-con" container. In accordance with the License Agreement, the Postal Service solicitation included the following statement:

"The Postal Service has a non-exclusive license under U.S. Patent Application Serial No. 588,143, now refiled as Continua-

---

1. This patent application was listed on the License Agreement as U.S. Patent Application No. 688,143 (sic), was later refiled as Continua-

tion-in-Part Serial No. 749,732 and was filed issued as U.S. Patent 4,065,141.

tion in Part Serial No. 749,732, with Banner Metals Division of Intercole Automation, Inc. Due to the existence of the license agreement a royalty evaluation factor will be applied to bids where appropriate."

Banner asserts herein that the Postal Service Contracting Manual § 1.304.3 "Procurement of Patented Items when Government is a Licensee" incorporated by reference in 39 C.F.R. § 601.100 sanctions the royalty evaluation factor.[2]

Both Superior and Banner submitted bids. Application of the royalty evaluation factor increased Superior's bid by 5%. Subsequently, the Postal Service accepted Superior's bid. On December 27, 1977, Banner's "post-con" container continuation patent application No. 749,732 was issued as U.S. Patent No. 4,065,141. By orders dated March 31, 1978 and October 26, 1978, the Postal Service paid to Banner the 5% royalty fees for the "post-con" containers manufactured by Superior.

In its first cause of action, Superior claimed that the application of a "royalty evaluation factor" in competitive procurement based only upon a *pending* patent *application* (emphasis added) is illegal and contrary to procurement policies. Superior argues that such evaluation factors and corresponding agreement provisions requiring royalty payments properly apply only to materials protected by actual U.S. Patents, not mere patent applications. Thus, Superior contends that, as a result of the enforcement of the licensing agreement between Banner and the Postal Service and the royalty payments to Banner by the Postal Service, Banner was guilty of unfair competition and did cause and continues to cause irreparable injury to Superior (Amended Complaint, ¶ 10). Superior claims that the royalty payment "will be used by Banner to improperly achieve a competitive advantage over Superior in present and future competitive procurement bids for the 'post-con' container." (Id. ¶ 16). Superior alleges that it will suffer irreparable harm unless royalty payments made by the Postal Service to Banner are returned to the Postal Service.

In moving to dismiss or, in the alternative, for summary judgment, Banner argues first, that Superior has failed to allege how or why it has suffered injury. Second, Banner asserts that Superior has failed to show any violation of a legally protected interest, that there is no justiciable controversy, and thus that Superior has no standing to sue.

In response, Superior claims that its first cause of action was designed to redress an overreach of alleged protection of property resulting from defendant's obtaining royalties on production of materials covered by a patent application as opposed to an actual patent. Superior claims that the 5% increase of its bid harmed its ability to compete with Banner. Superior further claims that Banner's receipt of the 5% royalty, even though the 5% was paid by the Postal Service and not by Superior, injured and will continue to injure Superior in that payment of the royalties to Banner bolsters Banner's economic condition and will enable Banner to underbid Superior in the future. Superior concludes that such an injury is sufficiently concrete to confer standing.

By its second cause of action, Superior seeks a declaratory judgment as to whether Superior is infringing U.S. Patent No. 4,065,141 for "Bulk Mail Container" issued to Banner, and as to whether said patent is valid (Id. ¶ 19). Superior apparently bases the first part of this cause of action upon an answer by defendant to plaintiff's interrogatories. Question 15 of plaintiff's interrogatories asked defendant to

"(s)tate if defendant contends that the 'post-con' container being supplied by

2. This provision states in pertinent part,

"  .   .   . If, at the time a solicitation is issued, the Postal Service is obligated to pay royalties applicable to the proposed procurement because of a pre-existing license agreement between the Government and a patent owner, the solicitation shall so state and shall: (i) identify the patents and specify the royalty rate; and (ii) advise that an amount equal to the royalty which the Postal Service will be required to pay under the license agreement will be added as an evaluation factor to each bid   .   .   . "

plaintiff in response to United States Postal Service Solicitation No. 104230–78–8–0121 infringes said U.S. Patent No. 4,065,141."

Defendant answered, "yes—all claims" were allegedly infringed.

In the second part of its second cause of action, Superior claims that Patent No. 4,065,141 is invalid on the grounds that the patentee—Banner—was not the first inventor; the "post-con" container was in public use and on sale in this country for more than one year prior to the filing of the patent application by Banner. Therefore, Superior asserts that Banner is estopped from maintaining that the claims of said Letters Patent have such scope as to cover or embrace any acts of Superior or apparatus used or sold by Superior.

In its present motion, Banner argues that an action for a declaratory judgment in patent cases must be based upon plaintiff's reasonable apprehension of facing either an infringement suit or the damaging threat of one to himself or his customers. Banner asserts that is only a statement with respect to plaintiff's infringement of Patent No. 4,065,141 and was in direct response to plaintiff's interrogatories. Banner argues that it did not go beyond this answer; it did not threaten Superior with litigation. And, furthermore, Banner claims that irrespective of its actions, 28 U.S.C. § 1498 effectively precludes Banner from bringing a direct action against Superior. Thus, defendant concludes that, as it has neither commenced, nor threatened litigation, there is no justiciable controversy which would support plaintiff's action for a declaratory judgment.

Superior argues in response that the "claim now being made by Banner that it has not asserted the patent in suit is belied by its compelling of the U.S. Postal Service, an actual customer of both parties now as well as a future potential customer of the alleged patented product, to enter into and live up to the terms of a royalty agreement involving the product, is clearly an assertion of patent rights affecting the plaintiff."

(Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss.)

Superior had brought a third cause of action alleging that Banner had conducted a "campaign of intimidation, harassment and annoyance against Superior (and its major customer) . . . with the purpose of injuring Superior's business." (Amended Complaint, ¶ 30). Following oral argument on the motion, Superior voluntarily withdrew its third cause of action.

## DISCUSSION

### I

The first issue before this Court is whether Superior has standing to sue. "For the purposes of ruling on a motion to dismiss for want of standing, . . . the Court . . . must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

Standing imports justiciability. The plaintiff must make out a "case or controversy between himself and the defendant within the meaning of Article III." *Id.* at 499, 95 S.Ct. at 2205. The plaintiff must allege "such a personal stake in the outcome of the controversy" as to justify exercise of the Court's remedial powers on his behalf. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); *Warth v. Seldin*, 422 U.S. at 499, 95 S.Ct. 2197. *See, Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Thus, "A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action.'" *Warth v. Seldin*, 422 U.S. at 499, 95 S.Ct. at 2205 and cases cited therein. Even if the alleged injury is also shared by a large class of other possible litigants, plaintiff must still "allege a distinct and palpable injury to himself." 422 U.S. at 501, 95 S.Ct. at 2206.

■ The fact that the alleged injury may have resulted indirectly, however, does not in itself preclude standing. As the Supreme Court stated in *Warth v. Seldin*, 422 U.S. at 505, 95 S.Ct. at 2208:

When a government prohibition or restriction imposed on one party causes specific harm to a third party, . . . the indirectness of the injury does not necessarily deprive the person harmed of standing to vindicate his rights. . . . But, it may make it substantially more difficult to meet the minimum requirement of Article III: to establish that, in fact, the asserted injury was the consequence of the defendant's actions or that prospective relief will remove the harm.

■ Thus, to assert standing herein, Superior must have (i) suffered a distinct or concrete injury from the alleged illegal enforcement of the licensing agreement[3] which was (ii) caused by Banner's actions. The crux of Superior's first cause of action is that, through enforcement of the terms of the License Agreement, Banner is guilty of unfair competition. Superior's injury allegedly arises out of this unfair competition. Yet Superior has failed to make any concrete allegations as to specific injury or economic harm. Any monies paid in royalties to Banner are paid by the Postal Service, not by Superior. Basically, Superior's position appears to be that the 5% royalty payments, paid to Banner by the Postal Service each time the Postal Service procures one of the items covered by the License Agreement from a source other than Banner, give Banner a competitive edge, an economic boost which will enable Banner to underbid Superior at some future date.

These alleged injuries are far too attenuated and speculative to confer standing herein. Superior has not alleged an actual, concrete, nor even sufficiently threatening injury to meet the standard required by law.

## II

Assuming arguendo, however, that Superior did have standing to sue, the next issue presented is whether plaintiff's second cause of action, wherein Superior seeks a declaratory judgment to the effect that (i) Banner's "post-con" patent, U.S. Patent No. 4,065,141, is invalid and (ii) that Superior is not infringing on said patent, is justiciable.

■ The Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* requires that in order to sustain jurisdiction, an actual controversy in the constitutional sense must exist. "[T]he court must be presented with 'a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged.' In patent cases . . . the determination of the existence of such a case or controversy turns upon whether a claim or charge of infringement has been made, directly or indirectly, by the owner of the patent." *Dr. Beck and Co. G.M.B.H. v. General Electric Company*, 317 F.2d 538, 539 (2d Cir. 1963). *See also, Sherwood Medical Industries, Inc. v. DeKnatel, Inc.,* 512 F.2d 724, 727 (8th Cir. 1975); *Muller v. Olin Mathieson Chemical Corporation*, 404 F.2d 501, 504 (2d Cir. 1968); *Wembley, Inc. v. Superba Cravats, Inc.*, 315 F.2d 87, 89 (2d Cir. 1963). The charge of infringement, however, is liberally construed, *Sherwood Medical Industries, supra,* 512 F.2d at 727; *Muller, supra,* 404 F.2d at 504; *Wembley, Inc., supra,* 315 F.2d at 89; it need not be formally asserted. *American Needle and Novelty Co. v. Schuessler Knitting Mills*, 379 F.2d 376, 379 (7th Cir. 1967).

If, however, the alleged charge of infringement is asserted informally or is implied, the appropriate test for determining whether a charge of infringement has in fact been made is whether defendant's actions, taking into consideration all of defendant's relevant conduct, *Sherwood Medical Industries Inc. v. DeKnatel, Inc.,* 512

---

**3.** To this end, *see Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979), holding that such an agreement pertaining to patent applications was not unenforceable on the theory that it was inconsistent with federal patent laws even if the patent was refused. *A fortiori*, the Agreement in the case *sub judice* is enforceable.

F.2d at 728, could give rise to a *reasonable apprehension* on the part of the plaintiff, that should plaintiff commence or continue the activity in question, he or his customers would face an infringement suit or the threat of one. *Id.* at 727. *American Needle and Novelty Co. v. Schuessler Knitting Mills*, 379 F.2d at 379.

This, necessarily, becomes a question of degree. *Sherwood Medical Industries, Inc., supra*, 512 F.2d at 727; *Muller, supra*, 404 F.2d at 504; *Wembley, Inc., supra*, 315 F.2d at 89. "Moreover, even in actions which technically fall within the jurisdictional requirements of § 2201, a court in its discretion may decline to exercise jurisdiction." *Dr. Beck and Co. G.M.B.H. v. General Electric Company*, 317 F.2d at 539. *See also, Broadview Chemical Corporation v. Loctite Corporation*, 417 F.2d 998, 1000–01 (2d Cir. 1969), *cert. denied*, 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (for guidelines for the exercise of the court's discretion).

Superior does not allege that Banner has brought suit against Superior. Rather, Superior requests this Court to find, based on defendant's alleged course of conduct, that defendant's actions would give rise to a reasonable apprehension by Superior that Superior or its customers faced an infringement suit. To this end, our analysis is best guided by the following three elements set forth by the United States Court of Appeals for the Second Circuit in *Wembley, Inc. v. Superba Cravats*, 315 F.2d at 89:

(i) the position of the declaratory plaintiff, i. e., that he be "engaged in manufacturing, using or selling the invention, or that he has the immediate intention and ability to do so." *Id.*

(ii) the nature of the threat against him; and

(iii) the party making the threat and whether his action can be attributed to the patent owner.

There is no doubt that the first and third factors are satisfied. We must focus then on the second factor, the nature of the threat.

■ Superior infers the threat of an infringement suit from (i) Banner's enforcement of its contract with the Postal Service, (ii) Banner's response to Superior's interrogatories, Question 15 (*see*, discussion *supra*), and (iii) three letters: (a) a letter from Banner dated April 27, 1976 to the United States Postal Service in which Banner agreed not to assert its patent rights, (b) a later letter from Banner to the Postal Service dated November 30, 1976, rescinding the agreement embodied in the April 27, 1976 letter,[4] and (c) a letter from Banner to Superior's counsel dated June 30, 1977 explaining the terms and effect of the License Agreement and refusing Superior permission to examine Banner's pending patent application.

At best, these factors, when considered together, establish that Banner is able to bring an infringement suit. But they do not, either when considered separately or as a whole, actually threaten litigation. Nor can they be reasonably inferred to do so. Indeed, Superior relies most heavily upon Banner's response to Superior's interrogatories. But stating that an infringement exists when responding to interrogatories served by the alleged infringer is a far cry from threatening to remedy said infringement. Thus, these factors do not justify a reasonable apprehension that Superior or its customers face an infringement suit.[5]

---

4. This Nov. 30 letter made no threat, express or implied, of bringing an infringement suit. At best, it merely raised the possibility that such a suit *could* now be brought.

5. *See, e. g. Sherwood Medical Industries, Inc. v. DeKnatel, Inc.*, 512 F.2d at 728 (holding that none of the following items sufficiently constituted a charge of infringement: (i) fact of past action for infringement against another competitor concerning same patents as case *sub judice*; (ii) a letter of caution from the patent holder requesting examination of plaintiff's products; (iii) actual examination of plaintiff's products, nor (iv) notification by an authorized employee of defendant patent holder that the plaintiff's products infringed defendant's patents and that defendant's attorneys concurred in that opinion.

But, factor (iv) when considered with the previous three did provide a basis for reasonable apprehension. In the present case, the plaintiff requested the opinion of the defendant and defendants attorneys as to infringement. In

Finally, Banner argues that since 28 U.S.C. § 1498(a) states

"[w]henever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture . . . ."

Banner is therefore precluded from bringing a direct action against Superior in district court; as a matter of law, Superior cannot infer a reasonable apprehension of litigation. This court does not agree. 28 U.S.C. § 1498(a) does provide that, given the facts presented, Banner's remedy for alleged patent infringement on the part of Superior is an action against the United States Postal Service in the Court of Claims. That fact alone, however, does not render this case non-justiciable. The test of justiciability may include a reasonable apprehension of suit on the parts of both the plaintiff-manufacturer *and* his customers. *See, e. g., Sherwood Medical Industries v. DeKnatel, Inc.,* 512 F.2d at 728. *Cf. American Needle and Novelty Co. v. Schuessler Knitting Mills,* 379 F.2d at 379 (suggesting that "a correct interpretation is . . . a reasonable apprehension by the plaintiff alone.").

For the foregoing reasons, we hold that plaintiff lacks standing to sue and that a

justiciable controversy is not present. Therefore, defendant's motions are hereby granted.

Submit judgment on notice.

---

essence, plaintiff's argument implies that the plaintiff, the target of the alleged threat, requested the very information from which it inferred the existence of the threat.
*See also, American Needle and Novelty Co. v. Schuessler Knitting Mills,* 379 F.2d 376 (7th Cir. 1967), *reh. denied* 1967 (letter of caution requesting sample insufficient to infer threat); *Walker Process Equipment, Inc. v. FMC Corp.,* 356 F.2d 449, 452 (7th Cir. 1966), *reh. denied en banc* (1966), *cert. denied,* 385 U.S. 824, 87 S.Ct. 56, 17 L.Ed.2d 61 (1966) (caution plus offer of license to potential infringers insufficient to infer threat of litigation).
*Cf. Blackman v. Hadron,* 450 F.2d 781 (2d Cir. 1971), (holding that litigious atmosphere and the effects of unresolved charges of infringement stemming from prior related lawsuit con-

tinue the threat of litigation and constitute a justiciable controversy); *Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998 (2d Cir. 1969), *cert. denied,* 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970) (holding that numerous letters from appellee to appellant and appellant's customers "coupled with the history of fierce litigation between the parties, strongly evidence a justiciable controversy."); *Muller v. Olin Mathieson Chem. Corp.,* 404 F.2d 501 (2d Cir. 1968) (holding that the "years of strife" between the parties, evidenced *inter alia* by numerous patent interference proceedings involving the parties, plus correspondence between the parties in which the defendant came "very close to claiming infringement" justified finding a threat of infringement).